20957

SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, Appellant, v. Katherine R. TURBEVILLE, as Executrix of the Estate of William S. Carter, Respondent.

(257 S. E. (2d) 493)

312

*Atty. Gen. Daniel R. McLeod* and *Larry W. Propes,* Columbia, and *Thomas L. Brooks,* of *Gentry & Brooks,* Saluda, *for appellant.*

*Steven M. Anastasion,* of *Callison, Tighe, Nauful & Rush,* Columbia, *for respondent.*

May 15, 1979.

LEWIS, Chief Justice:

This appeal is from an order of the circuit court concurring in the denial by the Probate Court of a claim of the appellant South Carolina Department of Mental Health, against the estate of William S. Carter, deceased, for the care, maintenance and treatment rendered to his wife, Georgianna Carter, in a State mental facility. The pertinent facts have been stipulated and are not in dispute.

Georgianna K. Carter and William S. Carter were married on June 3, 1926. About twenty (20) months later, on March 27, 1928, Mrs. Carter was admitted to a facility of

appellant on an application signed by her husband, William S. Carter; and remained continuously a patient and resident of the State mental health facility until her death in late 1977. Her husband died on January 11, 1976.

Appellant filed a claim against the estate of William S. Carter in the amount of $25,067.20, representing the expenses for medical care and maintenance incurred by Mrs. Carter in the mental facility from the date of her admission on March 27, 1928 through January 11, 1976, the date of the death of her husband. The denial of this claim by the estate was upheld by the Probate Court and subsequently, on appeal, by the circuit court. The question to be decided is whether the State is entitled to reimbursement from the husband for the expenses incurred by his wife in a State mental facility.

Appellant contends that the State should be reimbursed from the estate of the husband for the charges incurred by his wife because of (1) the husband's common law and statutory liability to provide his wife with the necessities of life; and (2) an implied contract between appellant and the husband existed pursuant to Section 44-23-1130 of the 1976 Code of Laws, as amended, for the reimbursement by him of these charges.

The lower court held that the husband's estate was not liable, either under the common law or statutes, in this State for the charges incurred by his wife while a patient at the State mental facility; that the husband had no contractual liability, either express or implied, under Code Section 44-23-1130, *supra;* and that Sections 44-23-1110 through 44-23-1140 of the 1976 Code of Laws, as amended, provides a statutory lien for reimbursement *from the patient* for expenses incurred for care and treatment at State mental health facilities, such constituting the exclusive right and remedy available to appellant for the recovery of such charges. We agree and affirm.

We do not think that the question of the right of the State to reimbursement under the present facts can be properly determined in the context of the common law or statutory duty of a husband to provide the necessities of life for his wife. The question is more properly considered in the posture of the State's right under the applicable statutes to require reimbursement from the husband for the care and maintenance of his wife in a State mental facility for approximately forty-eight (48) years with no suggestion during the period of a purpose of exacting reimbursement from him.

The State of South Carolina has for many years maintained mental health facilities to provide for persons afflicted with mental disease to the extent that, for their own welfare or the welfare of others or of the community, they require care, treatment or hospitalization. See Title 44, 1976 Code of Laws. These mental health facilities are maintained for the public welfare, upon the recognition that the family is unable in most instances to provide the specialized care and treatment required and that public safety overrides the usual right and capacity of the family to maintain the patient in the home.

Commitment and care of those who might endanger themselves, their families, or the community is a proper function of the State and the State may require reimbursement for such services or not as it sees fit. Therefore, whether or not reimbursement is required, from whom, and under what conditions must be determined from the policy of the State as expressed in the applicable statutory law.

The statutory provisions for reimbursement to the State for care and treatment of a patient in a State mental facility are set forth in Code Sections 44-23-1110 through 44-23-1140. Section 44-23-1110 directs the Department of Mental Health to establish the charges for the maintenance and medical care for patients of State mental facilities; and Sec-

tions 44-23-1120 and 44-23-1140 impose liability upon the estate of the patient for such care and maintenance and a lien for its enforcement. As stated in *S. C. Mental Health Commission v. May,* 226 S. C. 108, 83 S. E. (2d) 713: "Such legislation carries with it the thought of the responsibility of the State to care for its indigent insane with a view to improvement or cure, if possible, and that such treatment be paid for in whole or in part, if possible, by the patient or his or her estate."

Nowhere do the statutes provide for reimbursement from the husband for the care and maintenance of the wife in a mental health facility, but refer solely to reimbursement from the patient or his or her estate. Indicative of the legislative intent to confine liability to the patient and his or her estate are the provisions of Section 44-23-1130 which allow the Department of Mental Health to contract with other persons financially able to pay the expenses for the care and treatment of a mental patient. This section provides in part:

The Department of Mental Health shall make investigations and ascertain which of the patients or trainees of State mental health facilities or which of the parents, guardians, trustees, committees, or other persons legally responsible therefore are financially able to pay the expenses of the care and treatment, and *it may contract with any of these persons for a patient's or trainee's care and treatment.*

We think it clear that, in providing care and treatment for patients in State mental facilities, the General Assembly set forth the conditions upon which such care would be provided and the expectancy of the State to reimbursement for the costs. The provision for reimbursement by the patient and those who assumed a contractual liability therefor operated as the designation of the sole obligees for repayment.

Assuming common law principles controlled determination of liability for reimbursement to the State, as contended by appellant, the necessity for setting

forth the liability of the patient, who would certainly be liable under common law principles, is not apparent. The provision for liability of the patient and those contractually liable, and not the husband who would ordinarily also be liable for the necessities of the wife, is clear indication that there was no intent to base liability for reimbursement upon common law principles.

See: *Minter v. State Department of Mental Health,* 258 S. C. 186, 187 S. E. (2d) 890, where the contract of the husband to reimburse the State mental facility was construed by this court as only applicable to expenses incurred after the contract was executed and imposed no liability upon the husband for expenses incurred prior thereto.

The final contention of appellant, that an implied obligation arose under which the husband become liable for the care and treatment of his wife, is without merit. Appellant maintains that the husband, by petitioning for the commitment of his wife, implied that he would be responsible for the cost of her care and treatment. It is also asserted that a quasi-contract for reimbursement should be found so as to preclude the husband from being unjustly enriched. No agreement, either express or implied, between appellant and the husband has been shown, Certainly nothing in the provisions of Section 44-23-1130, *authorizing* appellant to contract for reimbursement for the cost of maintaining patients, affords any basis upon which to raise an inference that the husband, who did not contract, nevertheless became impliedly liable. As stated by the trial judge, appellant had ample opportunity during the approximately forty-eight years of the confinement of the wife to enter into a contract with the husband, but did not do so.

Neither did the fact that the husband petitioned for the commitment of the wife impose upon him any greater obligation than the statutes required in the confinement of any other patients. The record shows that the wife was committed under due process of law, presumably, for treatment and

as a protection to her and others. There is no contention that her confinement for forty-eight years was for any other purpose. We must assume, therefore, that the actions of the husband in petitioning for the commitment of his wife was prompted soley by the necessity to avail his wife of the care and treatment offered by the State and on the same conditions made available to all other citizens.

Judgement is accordingly affirmed.

LITTLEJOHN, RHODES and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.