0234

SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent, v. Butch FORRESTER, Appellant, In the Interest of Daphne FORRESTER—age 10, Angela Tucker—age 12, Misty Pulley—age 8, Children under the age of eighteen (18) years.

(320 S. E. (2d) 39)

Court of Appeals

---

[1] *Bailey v. Lyman Printing and Finishing Co.*, 245 S. C. 13, 138 S. E. (2d) 410 (1964).

514

*Adam Fisher, Jr.*, Greenville, *for appellant.*

*Asst. Sol. Kathleen P. Jennings*, Greenville, *for respondent.*

*James C. Moseley, Jr.*, Mauldin, and *W. Lindsay Smith*, Greenville, *Guardians ad Litem.*

Heard May 14, 1984.

Decided Aug. 20, 1984.

SHAW, Justice:

This is an appeal from a family court order directing appellant—Butch Forrester to submit to psychiatric testing and evaluation at his expense. We affirm.

The family court found Forrester had sexually molested his two minor nieces while visiting in Forrester's home. Both families live in the same neighborhood. The older niece, age twelve years, testified on five or six separate occasions when she was alone in Forrester's house, he would throw her onto the floor, tickle her, then insert a finger in her vagina, and suck on her breasts . She also testified she saw the same thing

happen to her cousin, the younger niece.

The younger niece, age eight years, testified Forrester fondled her breasts and vagina over her clothing and she saw "some things happen" to the older niece.

The eight year old natural daughter of appellant testified she neither saw nor was aware of any physical contact occurring between her father and her two cousins. Forrester denies all of these allegations.

A medical physician, Dr. Bannen, testified his examination of the older niece revealed irritation of the outer vagina but her hymen was intact. He further stated this irritation of the vagina was consistent with the case history given to him, and, while it was possible for penetration to occur without rupturing the hymen, he did not believe penetration occurred.

The family court found Forrester sexually abused his two nieces but there was no evidence of such abuse of his daughter. She remains in the custody of her natural parents. Both nieces were allowed to remain with their respective parents; however, Forrester was prohibited from having any contact with them or their families. Forrester was also ordered to undergo psychiatric testing and evaluation and to be responsible for any fee involved.

On appeal from an order of the family court, this court has the jurisdiction to review the entire record to determine the facts in accordance with its view of the preponderance of the evidence. *Spires v. Higgins,* 271 S. C. 530, 248 S. E. (2d) 488 (1978). This is an action brought by the respondent—Department of Social Services (DSS) under the Child Protection Act to protect two minor children from further sexual abuse.

Forrester argues the family court order is against the preponderance of the evidence, and, the family court lacks jurisdiction over this case of child abuse. We disagree.

In determining the weight of the evidence, this case turns on the testimony of the two nieces versus the testimony of Forrester. In support of the judge's finding is the testimony of Dr. Bannen concerning the irritation of the older niece's outer vagina. The trial judge had the opportunity to observe the witnesses and to judge their credibility. On the basis of the evidence and his own observations, the judge found the testimony of the girls worthy of belief. On the other hand, Forrester had every reason to deny his own

wrongdoing. The credibility of testimony is a matter for the finder of fact to judge. *Inabinet v. Inabinet*, 236 S. C. 52, 113 S. E. (2d) 66 (1960). Because the appellate court lacks the opportunity for direct observation of the witnesses, it should accord great deference to trial court findings where matters of credibility are involved. *Albert v. Blackwell*, 280 S. C. 128, 311 S. E. (2d) 101 (App. 1984); *Klutts Resort Realty v. Down 'Round Development Corporation*, 268 S. C. 80, 232 S. E. (2d) 20 (1977). Nothing in this record inclines us to overturn the family court's view of the evidence.

Concerning jurisdiction, Forrester first argues he does not come within the child protection statutes as he is not a "person responsible" for the children's welfare under Section 20-7-490(E) of the 1976 South Carolina Code of Laws. This section states:

> A person responsible for a child's welfare includes the child's parent, guardian, foster parent, an employee of a public or private residential home, institution or agency, or other person legally responsible for the child's welfare in a residential setting.

Forrester claims he was not babysitting the children nor was he acting in any other supervisory role and was thus not legally responsible for their welfare within the meaning of the statute. We disagree.

The cardinal rule of statutory interpretation is to ascertain and effectuate the legislative intent wherever possible. *Bankers Trust of S. C. v. Bruce*, 275 S. C. 35, 267 S. E. (2d) 424 (1980). Courts are not always confined to the literal meaning of a statute; the real purpose and intent of the lawmakers will prevail over the literal import of the words. *Gunnels v. American Liberty Ins. Co.*, 251 S. C. 242, 161 S. E. (2d) 822 (1968). We do not feel the legislature's use of the word "legal" is intended to make Section 20-7-490(E) applicable only to those persons who are granted legal custody of a child or who are in loco parentis with respect to a minor. Rather, it is apparent the legislature means to include any person who has the power to control or deal with a child within his or the child's home. The phrase "legally responsible for the child's welfare within a residential setting" includes those situations where a person has either the legal power to direct a child's activities or the physical power of custody and control.

We realize Forrester was not asked by the children's parents to supervise them when the incidents occurred.

The parents undoubtedly trusted Forrester and felt comfortable with the children visiting their uncle or being alone in his presence. However, the fact remains the two nieces were in Forrester's house, his residence, when the incidents occurred. He did not ask them to leave as he could have readily done. The children's homes are within walking distance of Forrester's house. Under these circumstances, Forrester clearly had the power to control these young girls and was "legally responsible" for them within the meaning of the statute.

Forrester also had a legal duty to refrain from wilfully injuring the children since they were guests in his house. Thus, he was legally responsible for their welfare to this extent under the law with respect to licensees. *See Frankel v. Kurtz,* 239 F. Supp. 713 (W.D.S.C. 1965).

Forrester next argues his alleged activities do not constitute "harm" under the statute. Section 20-7-490(C) defines the meaning of "harm":

> 'Harm' to a child's health or welfare can occur when the parent, guardian, or other person responsible for his welfare: ... (2) Commits or allows to be committed against the child a sexual offense as defined by the laws of this state.

Section 16-3-655 sets forth the offense of criminal sexual conduct with minors. To be in violation of this statute, the actor must engage in a "sexual battery" with the victim. Section 16-3-651(h) defines sexual battery:

> 'Sexual battery' means sexual intercourse, cunnilingus, fellatio, anal intercourse, or intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, except when such intrusion is accomplished for medically recognized treatment or diagnostic purposes.

Forrester claims there is no proof of any penetration on any part of the niece's bodies.

We have already held the preponderance of evidence shows that Forrester did insert a finger into the older niece's vagina. This is an intrusion into the genital

opening so as to constitute a sexual battery, however slight the insertion may have been.

Section 16-15-140 sets forth the offense of committing a lewd act upon a child under fourteen. This statute provides:

> It shall be unlawful for any person over the age of fourteen years to willfully and lewdly commit or attempt any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child.

Forrester's acts of fondling the breasts and vagina of ██ ██ the younger niece and sucking the breasts of the older niece were sufficient to constitute an offense under this section. Therefore, the trial judge was justified in finding that Forrester had committed a sexual offense against the children as defined by the laws of this state.

Finally, Forrester complains that the family court ██ went beyond its jurisdiction in ordering psychiatric evaluation and testing with Forrester responsible for the fees. Section 20-7-420(26) gives the family court the authority "[t]o order either before, during or after a hearing a mental, physical and psychiatric examination as circumstances warrant." The family court did not order mental treatment or commitment to a mental ward, but merely "psychiatric testing and evaluation" to determine if treatment is necessary. This part of the order is clearly within the family court's jurisdiction.

There is no express statutory authorization for the ██ family court to hold Forrester responsible for the psychiatric examination fee. However, Section 20-7-420(30) allows the family court "[t]o make any order necessary to carry out and enforce the provisions of this chapter." We believe the power to impose the costs of psychiatric evaluations on the person evaluated is necessarily and inherently concomitant with the power to order the examination itself.

The public policy of South Carolina also requires the ██ person examined to bear the costs thereof. While the state is responsible for those who might endanger their families or the community, the cost of examining and treating

such persons must be paid by the patient if possible. *See S. C. Dept. of Mental Health v. Turbeville,* 273 S. C. 311, 257 S. E. (2d) 493 (1979); Sections 44-23-1110 through 1140 of the 1976 South Carolina Code of Laws.

Affirmed.

BELL and CURETON, JJ., concur.