735 S.E.2d 664

**Benjamin JOHNSON, Appellant,**

**v.**

**Franklin JACKSON, Daniel S. Harpster, Tantara Transportation, Inc., and Palmetto Health Alliance d/b/a Palmetto Health Baptist, Respondents.**

Appellate Case No. 2011–187387.

No. 5037.

Court of Appeals of South Carolina.

Heard June 20, 2012.

Decided Oct. 10, 2012.

154

D. Michael Kelly and Brad D. Hewett, of Mike Kelly Law Group, LLC, of Columbia, for Appellant Benjamin Johnson.

John C. Bruton, Jr., Sarah Patrick Spruill, and John Michael Florence, Jr., of Haynsworth Sinkler Boyd, PA, of Columbia, for Respondents Daniel S. Harpster and Tantara Transportation, Inc.; Mason A. Summers, William C. McDow, and Shelton W. Haile, of Richardson Plowden & Robinson, PA, of Columbia, for Respondent Palmetto Health Alliance d/b/a Palmetto Health Baptist.

WILLIAMS, J.

This is an appeal from an order dismissing Benjamin Johnson's ("Johnson") negligence claims against Daniel Harpster ("Harpster"), Tantara Transportation, Inc. ("Tantara"), and Palmetto Health Alliance d/b/a Palmetto Health Baptist ("Palmetto Health") (collectively, Respondents). On appeal, Johnson claims the circuit court erred in granting summary judgment to Palmetto Health because Johnson presented evidence that Palmetto Health owed a duty to him, thus creating a genuine issue of material fact for the jury. In addition, Johnson contends the circuit court erred in finding he was a statutory employee of Tantara and thus barred from bringing suit against Tantara and Harpster by the exclusivity provisions of the South Carolina Workers' Compensation Act (the Act). We affirm in part and reverse in part.

## FACTS/PROCEDURAL BACKGROUND

On August 10, 2007, Tantara contracted with Labor Ready, a temporary employment agency, to use several of its workers, including Johnson, to load computers at Palmetto Health for subsequent delivery to HP Financial Services. Tantara also employed Harpster, a licensed commercial truck driver, to load and transport the computers. Palmetto Health contracted with HP Financial Services to remove the computers from its facility; however, it neither hired nor contracted with Tantara, Harpster, or Johnson to pick up and transport the computers.

Harpster's dispatch ticket listed two Palmetto Health contacts and indicated the pick-up location did not have a loading dock, requiring Harpster to load the computers curbside. Accordingly, at approximately 8:00 a.m., Harpster parked his tractor-trailer adjacent to the Taylor Street curb in front of Palmetto Health's Physicians Building, facing west near the intersection of Taylor and Sumter Streets in downtown Columbia, South Carolina. The Taylor Street curb was marked in yellow and was not identified as a loading zone by any official signage. Harpster placed triangle warning signs around the tractor-trailer and activated the tractor-trailer's hazard lights during the four hours the truck was parked outside Palmetto Health. Both Harpster and Johnson testi-

fied during their depositions that the tractor-trailer was not obstructing traffic.

Johnson met Harpster at approximately 9:30 a.m. After receiving instructions on how to package and load the computers, Johnson helped Harpster load the computers onto the tractor-trailer. At no point during this time was Johnson or Harpster required to cross the street to facilitate the loading process. As Johnson was standing on the tractor-trailer's lift gate, Franklin Jackson ("the Driver")[1] struck Johnson, Harpster, and the tractor-trailer with his vehicle as he was traveling west on Taylor Street. Johnson suffered severe and permanent injuries.[2] As a result, Johnson filed suit against the Driver on February 28, 2008, alleging the Driver negligently struck Johnson with the Driver's motor vehicle while Johnson was outside of Palmetto Health loading computers onto a tractor-trailer owned by Tantara and operated by Harpster.

On July 31, 2009, Johnson filed an amended complaint, adding common-law negligence claims against Respondents. As to Palmetto Health, Johnson alleged Palmetto Health was negligent in failing to provide him with a safe working place because it allowed Harpster to park and unload a tractor-trailer in a no-parking area. In response, Palmetto Health denied any liability and claimed it had no duty to Johnson and any of Johnson's injuries were not proximately caused by Palmetto Health. As to Tantara and Harpster, Johnson claimed they were negligent in parking the tractor-trailer along a yellow curb in a no-parking area. In response, Tantara and Harpster alleged Johnson was a statutory employee of Tantara at the time of the accident, and therefore, jurisdiction over his claims was vested exclusively in the Workers' Compensation Commission.

---

1. The Driver, an insulin-dependent diabetic, testified his insulin level dropped right before the accident, causing him to black out and lose control of his vehicle.

2. As a result of the collision, Johnson suffered severe injuries, including a broken jaw, broken left arm, torn ACL in his left knee, amputated right leg, internal injuries, nerve damage, and head injuries. Johnson incurred over $1,000,000 in medical bills and was declared permanently and totally disabled by the Social Security Administration.

Prior to filing claims against Respondents, Johnson received lifetime workers' compensation and social security benefits for his injuries and settled his claim against the Driver.

On July 7, 2010, Palmetto Health filed a motion for summary judgment pursuant to Rule 56, SCRCP. On July 27, 2010, Tantara and Harpster filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), SCRCP.

The circuit court held a hearing on both motions on November 2, 2010. On November 30, 2010, the court issued an order granting summary judgment in favor of Palmetto Health. The circuit court concluded Palmetto Health owed no legal duty to Johnson because (1) Johnson was not on Palmetto Health's property when the accident occurred; (2) there was no evidence of a relationship between Palmetto Health and Johnson; (3) Palmetto Health was not required by law to provide a designated loading zone for pick-up and deliveries of goods; and (4) the tractor-trailer was legally parked pursuant to section 56–5–2530 of the South Carolina Code (2006).

The circuit court also granted Tantara and Harpster's motion to dismiss pursuant to Rule 12(b)(1), SCRCP. Citing to the framework set forth in *Posey v. Proper Mold & Engineering, Inc.*, 378 S.C. 210, 661 S.E.2d 395 (Ct.App.2008), the court concluded the activities performed by Johnson were important, necessary, essential, and integral to Tantara's business and were also performed by Tantara's direct employees. Accordingly, Johnson was a statutory employee, and workers' compensation was Johnson's exclusive remedy. Johnson filed a Rule 59(e), SCRCP, motion for reconsideration in response to both of these rulings, which the circuit court denied. This appeal followed.

**STANDARD OF REVIEW**

As it pertains to Palmetto Health, when reviewing an order granting summary judgment, this court applies the same standard as the circuit court. *Fleming v. Rose*, 350 S.C. 488, 493, 567 S.E.2d 857, 860 (2002). Summary judgment is appropriate when there is no genuine issue of material fact such that the moving party must prevail as a matter of law. Rule 56(c), SCRCP. In determining whether any triable issues of fact exist, the court must view the evidence and all reasonable

inferences that may be drawn from the evidence in the light most favorable to the non-moving party. *Fleming,* 350 S.C. at 493–94, 567 S.E.2d at 860. On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party. *Osborne v. Adams,* 346 S.C. 4, 7, 550 S.E.2d 319, 321 (2001).

As it pertains to Tantara and Harpster, the determination of whether a worker is a statutory employee is jurisdictional and therefore the question on appeal is one of law. *Edens v. Bellini,* 359 S.C. 433, 440, 597 S.E.2d 863, 867 (Ct.App.2004).

When deciding questions of law, such as this one, this court has the power and duty to review the entire record and decide the jurisdictional facts in accord with its view of the preponderance of the evidence. *Poch v. Bayshore Concrete Prods./S.C., Inc.,* 386 S.C. 13, 21, 686 S.E.2d 689, 693 (Ct.App. 2009).

## LAW/ANALYSIS

### I. Existence of a Duty: Palmetto Health

In the instant case, Johnson only asserts a common-law negligence cause of action against Palmetto Health. In support of his claim, Johnson asserts Palmetto Health voluntarily assumed a general duty to Johnson and other individuals who picked up and loaded computers at its business because it maintained primary control of the loading area, knowingly and frequently managed the pick-up process, and directed Harpster where to park the day of the accident. We agree and as set forth below, we find whether Palmetto Health owed a duty to Johnson on the day in question was a question of fact for the jury.

To succeed in a negligence cause of action, the plaintiff must establish (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. *Moore v. Weinberg,* 373 S.C. 209, 220–21, 644 S.E.2d 740, 746 (Ct.App.2007).

A crucial element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff. *Burnett v. Family Kingdom, Inc.*, 387 S.C. 183, 189, 691 S.E.2d 170, 173 (Ct.App.2010). An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance. *Madison v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 656–57 (2006).

Under South Carolina common law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger. *Madison*, 371 S.C. at 136, 638 S.E.2d at 656. Absent a duty, there is no actionable negligence. *Burnett*, 387 S.C. at 189, 691 S.E.2d at 173. Our courts, however, have recognized five exceptions to this rule: (1) where the defendant has a special relationship to the victim; (2) where the defendant has a special relationship to the injurer; (3) where the defendant voluntarily undertakes a duty; (4) where the defendant negligently or intentionally creates the risk; and (5) where a statute imposes a duty on the defendant. *Madison*, 371 S.C. at 136, 638 S.E.2d at 656. Moreover, "[u]nder common law, even where there is no duty to act but an act is voluntarily undertaken, the actor assumes the duty to use due care." *Russell v. City of Columbia*, 305 S.C. 86, 89, 406 S.E.2d 338, 339 (1991). The question of whether a duty to act arises in a given case may depend on the existence of particular facts. *Vaughan v. Town of Lyman*, 370 S.C. 436, 446, 635 S.E.2d 631, 637 (2006). When there are factual issues regarding whether the defendant voluntarily undertakes a duty, the existence of a duty becomes a mixed question of law and fact to be resolved by the fact finder. *Id.* at 446–47, 635 S.E.2d at 637.

We find a genuine issue of material fact exists as to whether Palmetto Health assumed a duty of due care to ensure Johnson's safety on the day of the accident, despite Johnson's lack of contractual privity with Palmetto Health. Testimony was presented that Palmetto Health employees affirmatively instructed Harpster where to park and where to load the computers. Harpster testified that upon his arrival at Palmetto Health, he went inside Palmetto Health and spoke with a woman who was listed as the contact for pick-up on his

dispatch ticket. She instructed him where to park his tractor trailer. Upon exiting the building, Harpster stated the security guards at Palmetto Health also instructed him where to park and indicated that location was the common pick-up and drop-off parking zone for deliveries at the hospital.

Linda Taylor, the manager of desktop services at Palmetto Health, stated in her deposition that while she was one of the contacts on the dispatch ticket, she never tells the transportation companies where to park; rather, she tells them where the goods are located on Palmetto Health's premises. When questioned, she stated Palmetto Health has not changed their loading and unloading policies since the accident, and to her knowledge, deliveries were still being made at that location. Harpster's statement that he was instructed to park in the same location over a year after the accident affirms this testimony.

Based on the foregoing, we find conflicting testimony was presented about whether Palmetto Health assumed the responsibility of instructing individuals to park in this location, thereby creating a duty to ensure their safety. *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) ("Where there are factual issues regarding whether the defendant was in fact a volunteer, the existence of a duty becomes a mixed question of law and fact to be resolved by the factfinder."). Because summary judgment should be denied if more than one inference can be drawn from the evidence, we reverse the circuit court's grant of summary judgment to Palmetto Health on this ground.

## II. Tort Immunity: Tantara & Harpster

Next, Johnson argues the circuit court erred in granting tort immunity to Tantara and Harpster on Johnson's negligence claim because Johnson was not Tantara's statutory employee, its permanent employee, or its borrowed employee. We disagree and address each argument in turn.

### a. Statutory Employee

The Act is the exclusive remedy against an employer for an employee's work-related accident or injury. *Fuller v. Blanchard*, 358 S.C. 536, 540, 595 S.E.2d 831, 833

(2004). The exclusivity provision of the Act precludes an employee from maintaining a tort action against an employer where the employee sustains a work-related injury. *Tatum v. Med. Univ. of S.C.*, 346 S.C. 194, 201, 552 S.E.2d 18, 22 (2001). "The exclusive remedy doctrine was enacted to balance the relative ease with which the employee can recover under the Act: the employee gets swift, sure compensation, and the employer receives immunity from tort actions by the employee." *Poch*, 386 S.C. at 22, 686 S.E.2d at 694.

Coverage under the Act is typically dependent on the existence of an employer-employee relationship. *Edens*, 359 S.C. at 442, 597 S.E.2d at 868. However, there are certain statutory exceptions to this general rule. *Id.* One of these exceptions is found in section 42-1-400 of the Act, which, under some circumstances, imposes liability on an employer or business owner for the payment of compensation benefits to a worker not directly employed by the employer. *See* S.C.Code Ann. § 42-1-400 (1976); *see also Poch*, 386 S.C. at 24, 686 S.E.2d at 695 ("The concept of statutory employment is designed to protect the employee by assuring workmen's compensation coverage by either the subcontractor, the general contractor, or the owner if the work is a part of the owner's business.") (internal citation omitted).

The Act specifically provides that statutory employees are included within the scope of the Act:

When any person, in this section and §§ 42-1-420 and 42-1-430 referred to as "owner," undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 42-1-420 to 42-1-450 referred to as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Title which he would have been liable to pay if the workman had been immediately employed by him.

§ 42-1-400.

In determining whether a worker is a statutory employee, our courts consider the following three factors: "(1) whether the activity is an important part of the trade or

business, (2) whether the activity is a necessary, essential and integral part of the business, and (3) whether the identical activity in question has been performed by employees of the principal employer." *Poch*, 386 S.C. at 25, 686 S.E.2d at 695 (internal citation omitted). If the activity at issue meets even one of these three criteria, the worker qualifies as the statutory employee of the owner. *Edens*, 359 S.C. at 443, 597 S.E.2d at 868.

A review of prior South Carolina decisions demonstrates that no single bright-line test exists to determine whether an individual qualifies as a statutory employee. *Meyer v. Piggly Wiggly No. 24, Inc.*, 331 S.C. 261, 265, 500 S.E.2d 190, 192 (Ct.App.1998). "Each situation, therefore, must be evaluated on a case-by-case basis." *Id.*

Tantara is a full-service transportation company that specializes in shipping high-value technological equipment. The primary services Tantara provides include: packaging goods for transport, loading goods onto its truck, transporting the goods, and unloading the goods at the desired destination. Tantara employs drivers who perform all of these functions, and when large transportation jobs exist, additional temporary workers are hired to assist the drivers with the packaging and loading aspect of the job.

 Although Tantara was not Johnson's direct employer, we find Johnson was performing work for Tantara that would render him a statutory employee under the three tests espoused above at the time of the accident. First, packaging and loading technology equipment were an important part of Tantara's business. Because an integral part of Tantara's transportation business is agreeing to package and load goods, without these services, Tantara's financial profitability and customer base would undoubtedly diminish. To negate this factor, Johnson highlights the fact that Harpster has a commercial driver's license, which enables him to transport the equipment to its final destination, whereas, Johnson does not. While we agree with Johnson that transporting the goods is an important part of Tantara's business, this fact does not negate the importance and necessity of packaging and loading equipment, an undisputed prerequisite to the transportation component of Tantara's business. Last, Johnson performed the

same tasks that Harpster performed. During Johnson's deposition, he testified he assisted Harpster with packaging the computers and loading them onto the tractor-trailer. When asked whether he recalled doing anything specific that Harpster did not do, Johnson replied, "No, he did just about everything." Therefore, we find all three tests are met in the present situation.

Johnson cites to several cases in support of his argument that an activity must be the "main function and basic operation" of the business, not merely essential or necessary, for statutory employment to exist. However, we find each of these cases distinguishable from the present situation because in those cases, the basic operation of the putative employer differed greatly from the activity in which the plaintiff was engaged at the time of injury. *See Meyer*, 331 S.C. at 267, 500 S.E.2d at 193 (finding grocery store was not statutory employer of deliveryman for wholesale bakery because although baked goods were sold at grocery store, the sale and delivery of baked goods was not essential to operating the grocery store and relationship was only that of a vendor and vendee); *Abbott v. The Limited, Inc.*, 338 S.C. 161, 163–64, 526 S.E.2d 513, 514 (2000) (finding driver/deliveryman for common carrier was not a statutory employee of retail clothing company because although receiving clothing was an important part of retailer's business, the transportation of the goods was not a part or process of the business); *Glass v. Dow Chem. Co.*, 325 S.C. 198, 202, 482 S.E.2d 49, 51 (1997) (finding welders who were contracted to replace the façade of a building were not statutory employees of chemical company because specialized nature of repairs were not part of chemical company's basic operation). In those cases, transportation was not a main and integral part of the defendant's business for purposes of the Act. Here, Tantara's business *is* transportation of technological equipment, which necessarily includes packaging, loading, and unloading that equipment. Accordingly, we affirm the circuit court's legal determination that Tantara is entitled to tort immunity as Johnson's statutory employer.

### b. Casual Employee

Next, Johnson claims he was a casual employee; thus, the exclusivity provisions of the Act do not apply. We disagree.

Under the Act,

"[E]mployee" means every person engaged in an employment under any appointment, contract of hire, or apprenticeship, expressed or implied, oral or written, including aliens and also including minors, whether lawfully or unlawfully employed, *but excludes a person whose employment is both casual **and** not in the course of the trade, business, profession, or occupation of his employer.*

S.C.Code Ann. § 42–1–130 (Supp.2011) (emphasis added). When employment cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intent and understanding of both employer and employee that it shall not be continuous, it is casual. *Hernandez–Zuniga v. Tickle,* 374 S.C. 235, 248, 647 S.E.2d 691, 697–98 (Ct.App. 2007). We agree with Johnson that his employment with Tantara on August 10, 2007 was casual, in the sense that it was neither permanent nor continuous, but this does not end the inquiry. As required by section 42–1–130, his employment must be both casual *and* not in the course of the trade, business, profession, or occupation of Tantara. *See Carrier v. Westvaco Corp.,* 806 F.Supp. 1242, 1246–47 (D.S.C.1992) (finding work performed by plaintiff was part of the trade, business, profession or occupation of defendant, so it was unnecessary to consider whether plaintiff's employment was casual "since for an employee to be excluded under the [A]ct, his employment must be both casual and not in the trade, business, profession or occupation of his employer"). As stated above, Johnson's work the day of his accident was in the course of Tantara's business; thus, we find Johnson was not a casual employee of Tantara as contemplated by section 42–1–130.

### c. Borrowed Employee

Last, Johnson claims this court should employ the common-law borrowed employee test, which would establish that Tantara was not Johnson's special employer. We disagree, but because we find Tantara is Johnson's statutory employer, we need not address this argument. *See Poch,* 386 S.C. at 26, 686 S.E.2d at 696 (declining to address borrowed employee argument after finding defendant was plaintiff's statutory employer and entitled to workers' compensation immunity under that theory).

166

## CONCLUSION

Based on the foregoing, we affirm the grant of summary judgment as to Tantara and Harpster and reverse the grant of summary judgment as to Palmetto Health. Accordingly, the circuit court's decision is

### AFFIRMED IN PART and REVERSED IN PART.

THOMAS and LOCKEMY, JJ., concur.